### IN THE

## *SUPREME COURT OF JUDICATURE*

### OF THE

## STATE OF NEW-YORK,

#### IN AUGUST TERM, IN THE THIRTY-FIRST YEAR OF OUR INDEPENDENCE.

---

## Van Dyck *qui tam,* &c. *against* Van Beuren and Vosburgh.

THIS was an action of *debt,* brought by the plaintiff *qui tam,* &c. to recover the penalty given by the 9th section of the " *Act to prevent and punish champerty and mainte-nance.*" \* The declaration, after reciting the statute, states that one *Maria Herkemer,* unjustly pretending a right and title to one undivided ninth part of sundry lots, pieces or parcels of land, &c. lying in the town of *Kinderhook,* in the county of Columbia, after the publishing of the said act, to wit, &c. on the first day of *February,* 1800, at, &c. bargained and sold to the defendants, the same right and title to one undivided ninth part of the said lots, &c. of which, &c. neither she, the said *Maria Herkemer,* nor any, nor either of her ancestors, nor those by whom she claims the same, was or were in possession, nor of the re-version or remainder thereof, nor received the rents, &c. in a particular patent, without specifying the precise quantity or bounds, and the grantor has a legal title to, and possession of a part, and a part is unoccupied, though another part of the same patent be in the actual occupation of one who claims and holds ad-versely to the grantor, yet taking such a deed is not maintenance ; especially where the purchase was made by the *bona fide* advice of counsel, and there are other cir-cumstances to shew that there was no intention to purchase a pretended title.

ALBANY,
August, 1806.

Van Dyck
v.
Van Beuren &
Vosburgh.

In an action on the statute to *prevent cham-perty and main-tenance, for buy-ing a pretended title,* &c. it was held, that where the deed of the grantor, conveying such pretended ti-tle, describes generally, all the right and title to the land and the grantor

\* Greenleaf's edition of the Laws of New-York, vol. 2. p. 40. It is the 8th section of the act in the *Revised Laws,* vol. 1. p. 345.

Z 2

nor were the said defendants, or either of them, in posses-
sion of the said lots, at the time of the said bargain and sale,
&c. all which the said defendants sufficiently knowing, took
and accepted, &c. contrary to the form, &c. The plaintiff aver-
red the value of the premises to be 3,000 dollars. The de-
fendants pleaded *nil debent.* The cause was tried at the
*Circuit Court,* in *Albany,* the 6th of *September,* 1800, be-
fore Mr. Justice *Radcliff.*

The following were the material facts proved at the trial.
The plaintiff and his brother had lived on *De Bruy's* pa-
tent, of which the lots mentioned form a part, ever since the
year, 1752. They had been in the undisturbed possession
of the patent and had built a farm-house, barn, &c. upon it
and had cleared in several parts, about 120 acres, and exer-
cised various acts of ownership over it. The plaintiff and
another person took possession, about six years since, of
No. 1, in the 7th allotment of the division of a part of the
said patent, made in 1793, by inclosing it, and leased out
parcels of the said lot.

The deed of *Maria Herkemer* to the defendants was dated
the 8th of *February,* 1800, by which, in consideration of
375 dollars, she bargained, sold and released to them as te-
nants in common, all her right, title, &c. to a certain parcel
or right of land, belonging to her, in *De Bruy's* patent, and
" comprehended within the lands possessed by the *Van Dyck*
family, and as might be more fully seen by the will of *Ste-
phanus Van Alen* made the 17th of *May,* 1740." It was ob-
jected that this description was variant from that contained
in the declaration, but parol proof was admitted, though op-
posed, that subsequently to the deed, the defendants had
declared that they claimed a ninth part of the said *Stephanus
Van Alen's* right in *De Bruy's* patent, as well of all the
lands possessed by the *Van Dycks* as of the residue. Before
the defendants made the purchase they were informed by
the plaintiff, that he and *Henry Van Dyck* claimed the whole
share of *Stephanus Van Alen;* and the defendants were
warned not to make the purchase. The defendants replied,
that they were advised by counsel that they might purchase,

and that there was no dispute about it. One of the defend-
ants had declared to two of the witnesses, that in case they
lost the land, they were not to pay Mrs. H. any thing.

The defendants read in evidence the will of *Stephanus
Van Alen*, dated the 17th of *May*, 1740, by which he de-
vised all his lands, &c. in *De Bruy's* patent, to his three
sons equally, in fee, with a proviso, that they pay to his
four daughters, and to his *grand-daughter*, *Maria*, each
12l. 10s. within six years after the death of his wife, on con-
dition that if they or either of them fail to pay the said sums,
the said daughters and grand-daughter shall each have in
fee *one eighth* of all the lands bequeathed to the son in de-
fault. He further desired his sons, in case any of his
daughters were inclined to purchase of them the lands in *De.
Bruy's* patent, for a living for herself and family, to let such
daughter have it at the same price at which the sons had it.

Two of the sons died about 54 years ago, under age
and without issue. *Maria Herkemer*, who was the grand-
daughter mentioned in the will, married, and her husband
died about 10 years ago. For many years before, and ever
since, the death of her husband, she has resided out of the
state. The deed for her right in *De Bruy's* patent was exe-
cuted in *Canada*, and the defendants gave their notes for the
consideration-money. At the time of executing the deed, the
defendants were allowed 45 dollars for the trouble of coming
to *Canada*, and wished a greater allowance because they
should expend a good deal of money at law in getting the
land. Mrs. H. said she had a good right to the land, but
the *Van Dycks*, being in possession, intended to keep her
out. The plaintiffs claimed under the will of *Stephanus Van
Alen*, and in right of their mother *Hyletje*, one of the
daughters, all the lands in the patent; and they claimed to
hold by a construction which gave them the whole. A
grandson of *Stephanus Van Alen* and his heirs, had cut wood
on the undivided part of the patent for many years. About
three years ago, *Isaac Van Alen*, who possessed a piece of
land, laid out in one of the divisions of the patent, *under
Maria Herkemer*, was requested by the plaintiff to give up

the possession, which he refused as he meant to buy it. The plaintiff desired him not to do so, as he intended to go to the agent of *Maria Herkemer* and buy it for himself. The plaintiff also asked one of the defendants if he would take 500l. for his bargain, which he refused. Fourteen years ago, a piece of land was held in the patent by a person as tenant to one who married a grand-daughter of *Stephanus Van Alen.* It was further proved that in 1787, the plaintiff admitted the right of a daughter of *Stephanus Van Alen* and of *Maria Herkemer* to the lands in the patent.

In the year, 1720, a division of part of the patent was made, and in 1752, another division of a part; and the residue was divided in 1793. The lots composing the old farm, possessed by the plaintiff and his brother, were laid out for them in 1752, and the residue of the lands in dispute were laid out in 1793, for the representatives of *Stephanus Van Alen*, except two lots laid out in 1720 and 1752, two-thirds of which the plaintiff took possession of about 10 years ago, and the residue has been more than 30 years past, in the possession of the children of *Stephanus Van Alen*, the son of the testator.

The judge told the jury that the possession of one tenant in common, was the possession of the other, unless it appeared otherwise. That the plaintiff's possession having been so long, and he having received the rents solely for himself was proof that he held in his own right and adversely. That the plaintiff's case, according to the evidence, was complete; but if the jury thought, from the evidence of the plaintiff's declarations, that he meant to acknowledge the title of *Mrs. Herkemer*, and that he held for her, then they ought to find a verdict for the defendants, otherwise for the plaintiff. The jury found a verdict for the plaintiff for four hundred dollars.

There had been a former argument of the motion for a new trial, when the judges were equally divided in opinion. A change having taken place afterwards in the bench, it was agreed that the cause should be argued a second time.

On the second argument, *Williams and Hoffman* were for

·the defendants, and *Van Kechten and Van Ness* for the plaintiff.

*Williams* for the defendant.† The deed or contract must be truly and correctly stated in the declaration, and a variance between that and the proof will be fatal. On this point, there was no difference between an action on this and on any other penal statute. The same rules that were required in regard to the statute of usury, or any other penal statute, were applicable to this case. In cases upon such statutes, a variance between the date of the contract, as laid in the declaration and the one proved, had been held fatal.* Here the declaration stated the conveyance to be on the 1st of *February*, and it appeared in evidence to be dated the 8th of *February*. As the measure of damage in this case, depended on the value of the premises at the time of sale, the day was material.† The subject, or premises conveyed, ought also to be clearly and precisely laid in the declaration. If there be any uncertainty in this respect, parol proof cannot be admitted to alter or enlarge the grant, and thereby to increase the liability of the defendants. The parol evidence to explain what part the defendants claimed was inadmissible.

* *Cowper*, 671. *Carlisle* v. *Trears.*
*Douglas*, 665. *Bristow* v. *Wright.* See also the note in the last edition, as to the cases since, and the distinction.
† *Cro. Charles*, 232. *King & Barnes* v. *Hill* & *Windsor.* Hawk. ch. 86 sec. 11.

2. As to the title of the defendants. By the devise over in the will of *Stephanus Van Alen*, *Maria Herkemer*, became entitled to a *ninth* part; and though it may be contended on the other side that the second clause in the will defeats the operation of the first, and that a trust was created which survived to *Cornelius*, and that a deed from him was to be presumed; yet, from the terms of the will and the evidence, the inference was the reverse. There was no evidence of her paying any part of the legacy, and the presumption of law must be, that she entered under her own right to an undivided ninth part, to which she was entitled by the will, rather than under the operation of the second clause. All her acts, too, are evidence that she entered as a *tenant in common under the will*.

† The argument having been opened at a term prior to the commencement of these reports, I did not hear it. The substance is here given from some loose notes furnished by a friend.——*Reporter*.

ALBANY,
August, 1806.

Van Dyck
v.
Van Beuren &
Vosburgh.

* 5 Burrows,
2604.
*Empson* v.
*Shackleton.*
S. C. 2 Blk. 690.
† *Litt.* sec. 398.
1 *Salk*, 246.
‡ Cowper, 701,
217.
1 Burrows,
112.

§§ 7 Term 386.
389 *Doe* v. *Keen*
Gilb. Tenures
28.

* 6 *Comyn's*
*Dig. Seisin. F.* 2.

3. To create a lawful impediment to her conveying, there must be either an *actual, or presumptive ouster* : The co-tenants have never been turned out of possession, and the possession of *Hyletje*, one of the daughters, must be considered as a holding for the benefit of all the co-tenants.* A bare entry on another, without *actual* expulsion, will not create a disseisin, so as to prevent the possession of one co-tenant from enuring to the benefit of the other.† There can be no such thing as a parol *disseisin* by a mere adverse claim. ‡ The court ought not to presume a fact, so as to subject the defendants to a penalty. It is the province of the jury to presume an *ouster* ; here it was not left to them ; and if the court refuse a new trial on that presumption, they will take the question of fact from the decision of a jury. It is fairly to be inferred, from the facts in the case, that Mrs. *Herkemer* was under age when her aunt entered ; if so, the entry would enure to her benefit.§§

No *laches* can be imputed to Mrs. *Herkemer*, that she has not exercised her right within due time, for she has been out of the state, and during her absence her right would be saved.

The actual possession of the *Van Dycks* has been confined to 120 acres, until within a few years, and at the time of the trial they were not in possession of more than 310 acres. Now, Mrs. *Herkemer* could never be disseised of that part which the plaintiff has never possessed.* She could therefore legally convey her right to such part of the land as was not in actual adverse possession. The deed must be construed as intending to convey her right only to such part as was not possessed by the plaintiff. If a deed be susceptible of different interpretations, that ought to be adopted which will give it effect. If the parol evidence be rejected, there is no difficulty in giving this construction to the deed. To extend the title by construction, or *parol evidence*, so as to make the grantor liable to a penalty, is unnecessary and unreasonable. The expression is general, and it is fair to refer it to what was actually possessed by her own tenant. If the deed be construed to extend to her rightful estate only,

then there can be no ground for this action. The reference to the will of *Stephanus Van Alen*, shews merely that Mrs. *H.* intended no more than to convey her right and title to whatever she might lawfully claim under that will. Besides, the devise to Mrs. *H.* was a *lien* on the land, and the plaintiff took it with that lien, which may be a proper subject of conveyance, as in the case of mortgages and other liens.

4. Another objection is, that the *scienter* was a material fact, which ought to have been left to the jury, and it was not submitted to their consideration.

*Van Vechten* and *Van Ness* for the plaintiff.—1. The purchase is the basis of this action; the *time* is immaterial. The declaration states all material facts. The offence consists in purchasing land, the title to which the defendants *knew* was in dispute. If the objection had been made at the trial, it might have been obviated. It ought not to prevail here. The day need not be precisely laid, though it may be material to prove the day at the trial, in order to ascertain the damage. In case of bonds, notes, and other written contracts, where the paper is in the party's possession, the instrument must be truly and accurately set forth. In other cases, this is not required. The reason why the exact day must be proved as laid in the declaration, in cases of *usury*, is, because the offence is taking money for the *forbearance* from a certain day to a certain day; the day is material as there may be various contracts on different days, which would create distinct offences. Here there can never be another action for the same offence. The deed is merely evidence of the purchase. Because the date is different from that stated in the declaration, it does not follow that it is the true one, for it may have been antedated. But, it is sufficient answer, to say that the plaintiff was a stranger to the deed, and ought to be excused for any inaccuracy as to its date.*

* *Plowden* 84, 85. *Dyer* 74.

2. The deed was for the right of the grantor without specifying the quantity of land; it therefore becomes necessary to resort to parol evidence of the quantity. The

value of the land could not be ascertained without shewing the quantity, and that could be proved only by parol evidence. The *general description* in the deed rendered such proof necessary. If the quantity could not be ascertained by the deed, it must be proved *aliunde*. Can it be permitted that a party should intrench himself in general expressions, and evade the provisions of a highly beneficial statute, by using general words of description under which may be comprehended some trifling interest of the grantor that he might lawfully convey? If this be allowed, the act may always be eluded, and the oldest and best established titles to land be brought into litigation with impunity. The *purchase* being the *gist* of this action, the *quantum* was matter to enable the jury merely to ascertain the damages.* In another point of view, the evidence became necessary to repel an objection of the defendants, that the recovery was to be limited to the small quantity of land possessed by *Isaac Van Alen.*

3. As it has been already decided by the court, that Mrs. *H.* was *not a tenant in common*, it is unnecessary to argue that point.† It appears from the facts stated in the case, that *Hyletje* did make her election as to taking the land in lieu of the legacy. She and her children took possession of her share or portion.

4. It is objected that the recovery in this case, is for more than the plaintiff was entitled to, as other persons possessed some shares which ought to have been deducted. Some of these had been transferred to the *Van Dycks.* The quantum to be recovered was a question for the jury, and if they have found a trifling sum too much or too little, their verdict ought not to be disturbed. It does not appear, however, but that they did make the proper deductions.

5. The proof of *ouster* was strong and decisive. The opinion of the judge on that point was correct, and it was his duty to state it to the jury.‡

6. The entry of the plaintiff would be effectual, though Mrs. *H.* were out of the state, or an infant. For the statute

* 1 *Plowden*, 31, 85. 1 *Dyer*, 74. 1 *Hawk.* ch. 72. sec. 24. As to the *nature* of this action, & the *evidence* necessary to support it, see 15 *Viner Ab.* 171. T.
2 *Hawk.* ch. 86. p. 419. 7th ed.
† See 1 Caines, 84. *Van Dyck v. Van Beuren* and *Vosburgh.*

‡ See 1 *Caines*, 84.

merely saves the right of entry in the person, and it is not transferable. The saving it to the parties only, or their heirs, and not to their assigns. A feme covert may be disseised.*

7. The court cannot so construe or modify the deed, as to make it relate to the possession of *Isaac Van Alen* only. In this way the statute, which is made to protect *tertenants*,† and in aid of the common law for the prevention of litigation and fraud, would be entirely defeated. In regard to this statute, it is not necessary that the deed should be good, or bad *in toto.* It may be good in part, and void in part.‡ Though the deed, therefore, may be good as to a small part, still it is bad as to the residue, and that is sufficient to sustain the verdict.

7. Admitting the legacy to have been a *lien* on the land, which is very questionable, yet, as the money paid by the defendants was much more, it is evident that it was not their intention to buy a mere *lien.* At best, it was a *chose in action*, or conditional limitation, which was not assignable. Besides, admitting Mrs. *H.* had a right of entry for the non-payment of the legacy, still, it was a *disputed* right, and so within the statute. But, after 50 years have elapsed, the law will presume that the legacy was paid.

8. The application to counsel, so far from being an excuse to the defendants, shows that they knew the title was disputed, and that they only wanted the advice of counsel how they might evade the statute. The language of the deed, as well as the whole conduct of the defendants, manifests a contrivance to elude the penalty of this act. The *scienter* was clearly and indisputably proved, and the whole evidence in the cause was fairly left to the jury.

9. That the declaration is against the defendants *jointly* is no objection. The plaintiff being a stranger to the deed, is not bound to declare according to the exact rights of the parties.* The declaration is for a joint purchase, and so was the fact. Where the offence is one

ALBANY,
August, 1806.

Van Dyck
v.
Van Beuren &
Vosburgh.

* 1 *Leonard*, 166.

† *Hawk*, B. 1. ch. 86. sec. 14. 10 *Coke*, 48.

‡ 13 *Viner*, 58. n. 13. *Fait.* Hob. 14. 3 *Coke* 83. *Twine's* case. *Cro. Eliz.* 529.

* 15 *Viner*, 176. *Hawk.* B. 1. ch. 8. *s.* 14.

† *Cowper*, 611.
*Rex* v. *Clark.*

and single, and cannot be severed, an action will lie a-gainst two or more who join in committing it.†

*Hoffman* in reply. The offence created by the act, is not merely the taking of a deed. A contract, or agreement for the purchase of the pretended title is equally an offence. It is not true, that, if the plaintiff fail in the present action, the act will be evaded. An evasion of this *action*, and of the *act* are different things. This sort of action is not entitled to any particular favour, and the plaintiff ought to be bound to the strict rules of pleading. He might have declared generally; he has chosen to declare on a bargain and sale, and to rest himself on a particular deed, the date and contents of which he has set forth. He was not bound to set them forth, but if he will undertake to do so, he must prove the deed exactly as stated. Where the opposite party is in possession of a deed, the plaintiff need not make a *profert*, but he ought to state that fact by way of excuse. The act renders the date of the deed material, and the apparent date is, *prima facie*, the true day of delivery, unless the contrary be shown. If there were a difference, it should have been so stated in the declaration. The statute against *champerty* is entitled to no more favour than that against usury, or other penal statutes. In actions on such statutes, courts always hold the plaintiff to strict proof. Thus,

§ 2 *Bos.* & *Puller*, 281.

in the case of *Wilson qui tam* v. *Gilbert*, § the declaration described the parish as *Saint Ethelbug*, and it being proved that its real name was *St. Ethelburga*, the variance was held fatal. The plaintiff should have declared, that the defendants purchased *all* the pretended right of Mrs. *Herkemer*, and then averred that she had no right, &c. ¶

¶ 15 *Viner*, 176, *n.* 27.

The *scienter* is the essence of the offence, and the subsequent declarations of the defendants are no evidence of a *scienter* as to the purchase of *one ninth*.

2. Mrs. *Herkemer* does not pretend to claim the *one ninth* as devised under the will, and the parol proof was inadmissible. It may be requisite, in order to ascertain

the damages, but parol proof can never be received to vary the construction and affect the operation of a solemn deed.

ALBANY,
August, 1806.

Van Dyck
v.
Van Beuren &
Vosburgh.

3. Again, here is an action against the defendants *jointly* for a *joint offence*, when the statute mentions only a several offence. Every man must be responsible for his own acts. The *scientia* of one man it not the *scientia* of another. Though two are joined, yet one is liable. The statute speaks of the offenders as *single* or separate; it uses the words *buyer* or *seller*, and the *buyer* or *taker* incurs the penalty. Separate actions might have been brought. * The defendants are *tenants in common*, and are not liable for a joint penalty. Suppose that twenty individuals had purchased as many parcels of land, and had taken but one deed. If the action is brought against all, one might, on failure of the rest, be made liable for the whole.

* Cowper, 610.

4. The rule as to a deed being void in part, and void *in toto*, does not apply to the present case. Where a deed on the face of it, is void in part, it is void *in toto*, as an annuity deed; but this is by statute. Deeds for the purpose of maintenance were void at common law, before the statute of Henry VIII. Deeds for *champerty*, &c. are not made void by the statute against *champerty*. They are void by common law as being *maintenance*. The case cited in *Twyne's case*, was that of a fraud against the statute of *5 Elizabeth*. So that where a deed is to be made void by common law, it may stand as to such part as is not against the statute. Would this deed have been valid at common law? The possession of one tenant in common is the possession of all. Have the *Van Dycks* in regard to the whole 1200 acres *ousted* or *disseised* Mrs. *Herkemer?* The ouster or disseisin must be actual and coextensive with the whole 1200 acres, otherwise the plaintiff cannot claim by actual *ouster*. Disseisin was a crime at common law, † and was not to be extended beyond the actual possession or improvement of the land.

† 3 *Burrows*,
1732.
*Hawkins*, c⸍
64. sec. 3 .⸌
⸌ 4⸍

The possession in such case is not constructive. Where the party is in actual possession under a *legal title*, it may be extended by construction; but where he has no legal title, there can be no constructive possession. Constructive possession is matter of law; actual possession is matter of fact. If the legal title to any part be in the defendants, they have the constructive possession of all the land not in the *actual* possession of the plaintiff who claims merely by possession. Until six or seven years since, no more than 120 acres were *actually* possessed by the *Van Dycks*. Such a possession can never deprive Mrs. *Herkemer* of her right to sell her legal estate. By her tenant, *Isaac Van Alen*, Mrs. *H.* was in actual possession of a part of the land; her deed, therefore, will operate to convey so much at least. If the deed be valid so far, it is not within the statute. Why give land by construction to the plaintiff, rather than to Mrs. *H.* who being in possession of a part, under a legal title, has a fairer claim to have her possession extended by construction?

As the *scienter* constitutes the essence of the offence, it was the peculiar province of the jury to decide upon it. If the judge, by deciding on that fact, as well as on that of the *ouster* of Mrs. *Herkemer*, has withdrawn it from the consideration of the jury, the court ought to grant a new trial that the jury may pronounce upon what is so material in this action.

THOMPSON, J. On the argument of the present motion, a great variety of questions have been presented to the consideration of the court. I shall, however, confine myself to one or two of them, which go most directly to the merits of the case, and which, in my judgment, are sufficient to warrant the granting of a new trial.

This action was brought against the defendants on a penal statute, for purchasing, as is alleged, the pretended right of *Maria Herkemer* in *De Bruy's* patent, and which she claimed under the will of *Stephanus Van Alen*. It becomes necessary, therefore, to inquire, whether *Mrs. Herkemer*, at the time she executed the deed in question, had any right or

title to lands in *De Bruy's* patent which she could convey.

[Here the judge stated the clauses in the will.]

It appears from the case, that as lately as the year 1799, the plaintiff said he was willing to pay *Mrs. Herkemer* the legacy given her by the will, which was equivalent to an acknowledgment that it never had been paid, and by the operation of the will, the title and right to one-eighth of the land became vested in Mrs. *Herkemer.* It is said, however, that the plaintiff claimed title to the land under his mother, who was one of the daughters of *Stephanus Van Alen,* and under that clause in the will which it is contended gives to any of the daughters the right of electing to purchase the land. It is of but little importance as it respects the present suit, under what title the plaintiff claims, or whether that title be valid or not, provided the land was actually occupied, and the possession held adversely to Mrs. *Herkemer's* claim. But if Mrs. *Herkemer* was in possession, either by herself or her tenant, or if the lands were unoccupied, there can be no doubt the defendants have not incurred any penalty in purchasing.

That Mrs. *Herkemer* had possession of some land within *De Bruy's* patent is not denied. *Isaac Van Alen* was a tenant under her, though the quantity of land occupied by him does not appear, but it was deemed of some importance by the plaintiff, because he expressed a wish to purchase it from M.s. *Herkemer,* and declared his intention to apply to her agent for that purpose. Here was another recognition of Mrs. *Herkemer's* right in the patent. The deed given to the defendants would unquestionably vest in them Mrs. *Herkemer's* title and right to all the lands possessed by her tenant. But it is said the deed goes farther, and includes lands in the possession of the *Van Dycks.* The description of the premises, as contained in the deed, was general, because Mrs. *Herkemer's* claim under the will of *Stephanus Van Alen,* was that of an undivided right, and as a tenant in common with her co-devisees, as appears from the will. This will account for that part of the description which

speaks of land possessed by the *Van Dyck* family. If the *Van Dycks* had, by lapse of time, or otherwise, acquired an exclusive and adverse possession to a given portion of the lands of *Stephanus Van Alen* in this patent, so as to prevent the operations of the deed from Mrs. *Herkemer*, as to that part, this would not vitiate the deed with respect to the other lands where no such impediment existed. It cannot be pretended that if A should convey to B, by metes and bounds, 200 acres of land, and on a survey it should be ascertained that 10 acres were held adversely by D, that the deed would be void as to the residue. The judgment of law, I apprehend, upon such a case, would be, to pronounce the deed inoperative as to the land held adversely, and good as to the residue, 13 *Vin.* 58. The same rule of construction must be applied to the case before us. That the deed will be operative upon the land in possession of *Isaac Van Alen* is indisputable. How much that was is not shown ; it may be equal to Mrs. *Herkemer's* right in the whole patent. But from aught that appears, the deed will attach to a much greater quantity ; for the right of *Stephanus Van Alen* in *De Bruy's* patent was 1200 acres of land, and an adverse possession in the *Van Dycks* is shown only to about 430 acres ; and it does not appear but that the residue may be unoccupied, and might be legally conveyed.

The circumstance of the defendants having purchased under the *bona fide* advice of counsel goes very far to remove any criminal intention from the transaction ; and, in a doubtful case is, I think, entitled to considerable weight, for the purpose of shewing a want of the *scienter* required by the act, in order to subject a party to the penalty. It is true that the defendants were apprised that the plaintiff was in possession of a part of the land, but they also knew that Mrs. *Herkemer's* claim was only as a tenant in common ; and they probably were informed by their counsel that the possession of one tenant in common was the possession of all, and therefore, Mrs. *Herkemer* was so far in possession that she might legally convey even that occupied by the *Van Dycks.* The threats on the part of the *Van Dycks* to

prosecute the defendants if they purchased, are not entitled to much consideration; for they had good reason to conclude, that those menaces originated from an extreme anxiety on the part of the *Van Dycks* to make the purchase themselves. Under these circumstances I cannot think the defendants have subjected themselves to the penalty which has been recovered against them. My opinion, therefore is, that a new trial ought to be granted, with costs to abide the event of the suit.

Tompkins, J. concurred.

Kent, Ch. J.—Several grounds are taken in support of the motion:

1. It is alleged that there is a fatal variance between the deed stated in the declaration, and the deed exhibited on the trial, as to the date, and the description of the land. The deed produced bears date on the 8th of *January*, 1800, and the declaration states the bargain and sale to have been on the 1st of *February* following. But the declaration does not undertake to say that the deed was *dated* on the 1st of *February*, and does not in terms contradict it; for the sale may have been on the 1st of *February*, notwithstanding that the deed had an antecedent date. The two facts do not necessarily contradict each other, and it was not incumbent on the plaintiff to have stated precisely the date of the deed, nor its commencement, for he is presumed to be a stranger to it, and so it was held in the case of *Partridge* v. *Strange and Croke, Plowden,* 77 *b. Dyer,* 74. *S. C.* In respect to the description of the land, the deed was sufficiently set forth, and there is no absolute variance. The declaration states that *Maria Herkemer* pretended a right to *one-ninth* of sundry lots or parcels of land in *Kinderhook*, and sold the same; and this deed is for all her right and interest in and to a tract of land being in *De Bruy's* patent at *Kinderhook*, without stating precisely the amount of her right. *All her right*, as stated in the deed, may well be intended to apply to her claim to a *ninth part*, as stated in the declaration; and as the plaintiff was a stranger to the contract,

it was sufficient if he stated the substance. The *gist* of the action consisted in selling a pretended title; the amount of the right claimed was only matter of damages.

2. The next objection is to the competency of parol proof of *Maria Herkemer's* claim, to one-ninth, as stated in the declaration. But this objection does not appear to me to be well taken; for the testimony did not go to vary or extend the deed. The deed was for all her right, without specifying the extent or quantity of it, and the parol proof was to shew what was the quantity. This proof was necessary for the purpose of estimating the value of the land sold by the deed. The jury, without this evidence, would not have had any rule for the assessment of damages. If this proof was to be excluded, a general conveyance of right, without mentioning the extent of it, would completely elude the provisions of the statute.

3. But a more serious doubt is raised as to the illegality of the deed, because it was proved that *Maria Herkemer* was in possession by her tenant *Isaac Van Alen* of some lands in *De Bruy's* patent which had belonged to the estate of *Stephanus Van Alen;* and it is further urged, that, except as to the lands in the actual and adverse possession of the *Van Dycks,* an *ouster* of Mrs. *Herkemer* as to the residue was not to be presumed. As to the question whether Mrs. *Herkemer* was, or was not, to be adjudged out of possession, at the time of the execution of her deed, of all the lands in *De Bruy's* patent, claimed under *Stephanus Van Alen,* the tenancy of *Isaac Van Alen* excepted, I had supposed it would not again have been agitated after the decisions of this court in *April* Term, 1801, and *May* Term, 1803, on the same question, in a controversy respecting the same deed, between *L. and H. Van Dyck and the defendants.* (1 *Caines,* 84.) It will be sufficient to observe that, if the facts in this case are substantially the same with those in the former cases, I shall consider myself as bound by those decisions. I have carefully compared the facts and there does not appear to

me to be any material difference as far as they relate to the *ouster* of Mrs. *Herkemer*. It is stated in the present case, that the plaintiff and his brother claimed the lands in *De Bruy's* patent, under the will of *Stephanus Van Alen*, and in right of their mother *Hyletje*, and that under that will, *they claimed all the lands in the patent* derived from *Stephanus Van Alen*, and that the lands *they held* were on a construction of the will that gave them *the whole*; that the share of *Stephanus Van Alen* amounted to 1200 acres, chiefly pine land; that the plaintiff and his brother have lived on the land ever since the year 1752, claiming and using it as their own, and from time to time extending their improvements and inclosures, and that for years antecedent to the date of the deed, they had 430 acres in different parcels in the patent under inclosure and occupation. These facts, in connection with the other facts, that *Maria Herkemer's* right accrued 54 years before the death of her uncles, and that she had been married at least 40 years before the date of the deed, and had never possessed or enjoyed any part of the lands in the patent, or the rents or profits thereof, except a small and recent possession taken under her by *Isaac Van Alen*, furnish, in my opinion, *data* equally strong with those in the former cases to presume her ousted; and under the authority of those decisions, that conclusion is now to be adopted.

With respect to the possession of her tenant, it was matter of evidence whether the general sale of all her right in the patent was intended to operate only upon the parcel of land possessed by *Van Alen*. The words of the deed are not so confined; she grants all her interest in that tract of land, in the patent *now comprehended within the lands possessed by the Van Dyck family*. This description, by the terms of it, refers not to *Isaac Van Alen's* lot, but to lands possessed by the *Van Dycks*, and the better construction is, that the possession of *Van Alen* did not pass. The suggestion that *Van Alen's* lot was surrounded by lands possessed by the *Van Dyck* family, does not appear to be warranted by the case; it is a forced and unnatural construc-

Van Dyck
v.
Van Beuren &
Vosburgh.

tion of the meaning of the description ; and if we resort to parol proof it is clear that Mrs. *H.* meant to convey, and the defendants to purchase, lands possessed and held adversely by the *Van Dyck* family. The words of the deed are susceptible of this definition and location, and if it were admitted that there was an ambiguity as to the lands intended, it is at least an *ambiguitas latens* which is explainable by parol proof. That the deed was intended to convey a ninth of the *Van Dyck* possessions was not disputed upon the trial. Its being limited to *Isaac Van Alen's* possession, made no part of the defence, but the defendants set up at the trial, the right of Mrs. *Herkemer*, under the will of her grand-father, to an undivided ninth part of his estate in the patent ; and from the deed itself and their declarations, made before and after its execution, it was a clear and undoubted fact, that they claimed under it the possession of the *Van Dycks.*

But admitting the deed to have embraced the possession of her tenant, and to have been so far valid, that will not affect the plaintiff's right of action. The statute cannot be eluded by fraudulently associating with a pretended title to one farm, a valid one to another. As the statute has only superadded to the common law offence, the penalty of forfeiture of the value of the lands sold under the pretended title, it may perhaps be that the deed is left to its operation at common law, by which it would be good as to one title and void as to the other. Admitting the deed to receive this construction, it appears to me to be a point immaterial in the case. Whether the possession of *Van Alen* be or be not included in the deed, it was manifestly intended to embrace a *ninth* of the *Van Dyck* possessions, and is equally within the letter and spirit of the act. A party can never be admitted to defeat, or defy the provisions of the statute by cunning and contrivance. Our manners and state of society have no doubt greatly diminished the terrors of this species of maintenance, but the mischiefs of the fraud accompanying such acts, remain in full force. The policy of the act may change ; but its construction cannot. The evil

Intended to be prevented, is described in elevated and solemn language in the old books ; " when many thought they had " title or right unto any land, they for the furtherance of " their pretended right, conveyed their interest in some part " thereof to great persons, and with their countenance did " oppress the possessors." *(1 Leon. 167.)*

It was further objected, that the suit being for a penalty, ought not to have been brought against the defendants *jointly*, as they are not answerable for each other's intentions, and as they attempted to take as tenants in common. But this was a single offence, committed by a joint act, and the statute gave but one forfeiture or penalty. Nothing is more common than to join several defendants in one *qui tam* suit or information upon a penal statute, and the defendants, even in the action of debt, may plead *nil debent*, or not guilty at their election, and they ought to sever in their pleas, if the nature of their defence require it. *(Hawk. b. 2. ch. 26. sec. 66, 67, 68. Buller's N. P. 197.)* The offence here was in its nature single, and the penalty conseqently single ; though the defendants united in committing it, it was still but one offence. *(Cowp. 612.)* The leading case under the stat. of 32, *H. 8. c. 9.* of which our act is a copy, is that of *Partridge, qui tam,* &c. v. *Strange & Croker,* and which is so fully and carefully reported in *Plowden.* That was a suit against two defendants for the like offence, and notwithstanding a variety of objections were taken to the action, it appears that the one now under consideration, wholly escaped the attention of the learned serjeants who managed that cause, and I cannot but conclude that it must be deemed without foundation. The operation of the deed, upon the face of it, being to create an estate in common, makes no difference. The pretended title did not pass at all, but the criminal act was equally joint, as it was done by one and the same joint purchase. If, however, we were to allow weight to this objection, it is a sufficient answer to say, that it cannot arise, or be admitted under the present motion for a new trial.

ALBANY,
August, 1806.

Cheviot
v.
Brooks.

If it were true that the *scienter* was not submitted to the jury, I should be very unwilling to uphold the verdict, but the case does not warrant that inference. The evidence of the intent of the party was full and complete.—The act was committed after warning given, and was done upon the advice of counsel, which, though it might palliate, can never be permitted to justify an offence against the laws. When, therefore, the judge told the jury, that the plaintiff's case, according to his evidence, was made out, he told them what was no more than palpable, as to the *quo animo* of the parties. In my opinion, therefore, the motion for a new trial ought to be denied.

LIVINGSTON, J. and SPENCER J. having been counsel in the cause, gave no opinion.     New trial granted.